# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| M5 MANAGEMENT SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No.:  5:18-cv-00209-LCB |
| v. | ) ) | |
| RICK YANAC, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the Defendant Rick Yanac's motion to dismiss portions of the Plaintiff M5 Management Services, Inc.'s complaint and motion to grant summary judgment as to the remaining claims. The Plaintiff asserts five causes of action against the Defendant: breach of contract (Count I) (Doc. 26, p. 7); injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) (Count II) (Doc. 26, p. 8); monetary relief pursuant to 18 U.S.C. § 1836(b)(3)(B) & (C) (Count III) (Doc. 26, p. 8); breach of fiduciary duty (Count IV) (Doc. 26, p. 9); and request for preliminary and permanent injunction (Count V) (Doc. 26, p. 10). The Defendant asks the Court to dismiss Count I(c) and Counts II-V and also asks the Court to grant summary judgment as to Counts I(a-b) and again to Counts IV and V. (Doc. 31). The Court will consider Counts I(c), II, and III for the motion to dismiss and Counts I(a-b), IV, and V for the motion for summary judgment. For the reasons stated below, the Court

1

finds that the Defendant's motion to dismiss is due to be granted and the Defendant's motion for partial summary judgment is due to be granted in part and denied in part.

## I.    BACKGROUND

The Plaintiff is a corporation that assists its clients "to improve their fixed operations business in their parts, service and collision centers" and has developed unique business methods and procedures that are valuable to the company. (Doc. 26, ¶ 7, 9). The Defendant entered employment negotiations with the Plaintiff in August 2010. (Doc. 31, ¶ 5). The Plaintiff claims that the Defendant began working for the company in October 2010[1] and stopped in July 2017. (Doc. 26, ¶ 10). While serving as Vice President of Operations, the Defendant had access to the Plaintiff's confidential information, such as trade secrets, candidate lists, and valuable business information. (Doc. 26, ¶ 11). As a condition of his employment, the Defendant signed an agreement on November 11, 2010, that he would not: personally use the confidential information or trade secrets he learned while employed; directly or indirectly compete with the Plaintiff within the United States for two years after his termination; contact or solicit any of the Plaintiff's clients within two years after his termination; or solicit any of the Plaintiff's employees to leave their jobs or request

---

[1] The Defendant claims that he started with the company in December 2010, a dispute that is relevant when discussing his motion for partial summary judgment. The date of the Defendant's departure is not an issue.

business from the Plaintiff's customers for two years after his termination. (Doc. 26, ¶ 13).

After the Defendant left his position in July 2017, he started a business called Consulting Automotive Resource Specialists, or ("CARS"). (Doc. 26, ¶ 14). The Defendant described CARS as a "brand new fixed operations consulting firm" that can improve its customers' service departments in an email to a potential client on October 18, 2017. (Doc. 26, p. 21). The Plaintiff claims that the Defendant violated his employment agreement by operating a competing organization and soliciting business from one of its customers. (Doc. 26, ¶ 14; p. 21-22). Additionally, the Plaintiff claims that the Defendant used its confidential information while operating CARS. (Doc. 26, ¶ 15). The Plaintiff attempted to contact the Defendant on October 26, 2017, to inform him that he was in violation of his employment agreement and needed conform his behavior to its terms. (Doc. 26, ¶ 16, p. 24). As the Defendant did not respond to this demand, the Plaintiff requests relief from the Court in the form of compensatory damages, punitive damages, and injunctive relief. *See* (Doc. 26).

## II.    STANDARD OF REVIEW – MOTION TO DISMISS

Federal Rule of Civil Procedure Rule 8(a)(2) mandates that a pleading contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A pleading does not have to include "detailed

factual allegations" to survive. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a complaint cannot simply have "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

A defendant can move to dismiss a complaint when he believes it is deficient. Rule 12(b)(6) allows defendants to request that the court dismiss a case for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss, the court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Properties*, 814 F.3d 1213, 1221 (11th Cir. 2016). The court is not bound to accept the plaintiff's allegations as true if they are legal conclusions. *Iqbal*, 556 U.S. at 678. Moreover, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of

Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross and Blue Shield of Fla, Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997).

## III.   DISCUSSION – MOTION TO DISMISS

### A. Count I(c) - Breach of Contract

The Plaintiff claims the Defendant breached his employment agreement in several ways including: "a) operating as a competitive business, including soliciting, selling, or assisting in the sale or provision of services such as those provided by [the Plaintiff]; b) soliciting and working with [the Plaintiff's] customers and/or clients on behalf of themselves or other competitive entities; and c) removing, using, and/or sharing [the Plaintiff's] confidential and proprietary information." (Doc. 26, ¶ 20). The Defendant only targets Count I(c) in his motion to dismiss. He claims that the pleading is deficient as the Plaintiff does not detail what information is "confidential and proprietary," nor does it detail what information was removed, used, or shared. (Doc. 28, p. 5).

The Plaintiff justifies its allegation that the Defendant misused its confidential and proprietary information by repeating the same statements listed in the complaint. (Doc. 35, p. 2-3). It claims that the Defendant used the confidential information he obtained as a former employee in the operation of his new business. (Doc. 35, p. 2).

To support its reasoning, the Plaintiff argues that it did not refer to the confidential information in a general fashion but listed it as things like "sensitive and valuable business information, trade secrets, pricing information, [and] prospect lists." (Doc. 26, ¶ 11). While defending its claims under Count II, the Plaintiff suggests that its allegations in Count I are adequate, and confidential information can be discussed in general terms, (Doc. 35, p. 3), citing TRADE SECRETS LAW by Melvin F. Jager.

A party does not have to fully divulge the details of its confidential and proprietary information to survive a motion to dismiss. *See DynCorp Int'l v. AAR Airlift Grp., Inc.* 664 F. App'x 844, 849 (11th Cir. 2016). However, the allegations must be more than general categorizations to be sufficiently pled. *See id.* at 849 (the Court finding that the plaintiff's pleading identifying trade secrets was sufficient as it contained more than "broad categories of information.") *See also RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1352 (M.D. Fla. 2019) (district court finding that pleadings were adequate when they did more than suggest "the existence of general categories of 'confidential information.'") The allegations must allow the defendant to have notice of the basis of the plaintiff's claims. *DynCorp Int'l*, 664 F. App'x at 850. Construed in the light most favorable to the Plaintiff, the confidential information alleged in the complaint and then reincorporated in Count I(c) is simply a generalized list of alleged proprietary material. Such a broad listing of information is not enough to survive a motion to dismiss. *Id.* at 849.

Further, even if the Plaintiff's description of its confidential information was adequate, the Plaintiff has not satisfactorily alleged in what ways the Defendant removed, used, or shared the information in violation of his employment agreement. The Plaintiff argues that the complaint read in its entirety supports the allegation the Defendant used the confidential information inappropriately in his business. (Doc. 35, p. 2-3). However, the Plaintiff does not support its claims with any of the necessary factual allegations to move its claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. The Defendant having access to confidential information and operating a business does not automatically create a plausible presumption that he is in breach regarding this allegation. Accordingly, because the Plaintiff does not plausibly state a claim for which relief can be granted, Count I(c) of the complaint is dismissed.

**B. Counts II & III – Injunctive and Monetary Relief Under 18 U.S.C. § 1836**

The Plaintiff also alleges that it is entitled to both injunctive and monetary relief under 18 U.S.C. § 1836, or the Defend Trade Secrets Act of 2016 ("DTSA"). Because these claims arise under the same statute, the Court will address both in this section. Regarding Count II, the Plaintiff claims that it is entitled to injunctive relief "to prevent actual or threatened misappropriations" of trade secrets from the Defendant. (Doc. 26, ¶ 23). Likewise, the Plaintiff claims that it is entitled to monetary relief for the loss caused by the Defendant's misappropriation of trade

secrets and exemplary damages because of willful and malicious misappropriation. (Doc. 26, ¶ 25-26). The Defendant argues that the Plaintiff failed to state a claim for relief as it did not allege what the trade secrets were and did not allege how he misappropriated the secrets pursuant to the statute. (Doc. 28, p. 6).

A party can bring a claim under the DTSA for injunctive relief "to prevent any actual or threatened misappropriation" of trade secrets. 18 U.S.C. § 1836(b)(3)(A)(1). A party can also seek damages "for actual loss caused by the misappropriation of the trade secret" and twice the amount of damages if the trade secret was willfully and maliciously appropriated. 18 U.S.C. § 1836(b)(3)(B)(i)(I) & (C). Trade secret is defined in part as "all forms and types of financial, business, scientific, technical, economic, or engineering information." 18 U.S.C. § 1839(3). In addition to this categorization, the owner of the trade secret must show that he or she has taken reasonable measures to keep the information secret and there is "independent economic value, actual or potential" from being kept confidential. 18 U.S.C. § 1839(3)(A) & (B). Further, misappropriation is defined in relevant part as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5)(A).

The Plaintiff's claims under the DTSA contain the same flaw as Count I(c). It has not adequately alleged what trade secrets have been misappropriated that meet

the definition of each term under 18 U.S.C. § 1839. The Plaintiff uses the term "trade secrets" once when describing its confidential material but does not provide any supporting information in the complaint as to what the trade secrets are. (Doc. 26, p. 3). Even a generous construction of "trade secret" listed in the provided section of the employment agreement yields another "broad categor[y] of information" without an adequate description. *See* (Doc. 26, p. 4-5); *DynCorp*, 664 F. App'x at 849.

Additionally, the Plaintiff did not plausibly allege any facts suggesting that the Defendant misappropriated any trade secrets, let alone willfully or maliciously. The Plaintiff attempts to distinguish itself from the plaintiffs in *M.C. Dean v. City of Miami Beach*, 199 F. Supp. 3d 1349 (S.D. Fla. 2016), a case cited by the Defendant to show the claims in Count II and III have been inadequately pled. (Doc. 28, p. 6). It claims that unlike the plaintiffs in that case, it could survive a claim under the DTSA because it had stated what steps it had taken to protect its trade secrets, and there is a plausible allegation of misappropriation. (Doc. 35, p. 4). However, whether the Plaintiff protected the trade secrets is not dispositive in this case. What is important is that the Plaintiff did not adequately allege what its trade secrets were or how the Defendant misappropriated them. Accordingly, Counts II and III of the Plaintiff's complaint are dismissed.

## IV. STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.")

## V.     DISCUSSION – MOTION FOR SUMMARY JUDGMENT

## A. Count I (a-b) – Breach of Contract

The Plaintiff asserts that the Defendant violated his employment agreement by operating a competitive business and soliciting clients within two years after his employment ended. (Doc. 26, ¶ 20). The Defendant argues he was not an employee when he signed the agreement. (Doc. 31, p. 12). Thus, any agreement containing language restraining trade was void unless the signatory was an agent or employee pursuant to Alabama Code § 8-1-1[2]. (Doc. 31, p. 12). The Defendant signed the employment agreement on November 21, 2010 (Doc. 26, p. 19), but claims his first day as an employee was December 1, 2010. (Doc. 32, p. 4). The Plaintiff counters that the Defendant could be considered an employee when he signed the agreement because he performed work for the company before November 21, 2010. (Doc. 38, p. 4). As such, it contends that a genuine dispute of material fact exists over the Defendant's employment status.

"A person or entity seeking to enforce a contract that restrains the exercise of a lawful trade or business has the burden of showing that it is not void under Ala. Code 1975, § 8-1-1." *Constr. Materials, Ltd. v. Kirkpatrick Concrete, Inc.*, 631 So. 2d 1006, 1009 (Ala. 1994). An agreement restraining trade "that does not fall within

---

[2] Section 8-1-1 of the Alabama Code was revised and replaced with 8-1-190 on January 1, 2016. *See* Will H. Tankersly et. al., *Alabama Enacts Major Revision of Alabama Code 8-1-1*, 76 AL. LAW. 384 (2015). However, Section 8-1-190 is not applied to this case retrospectively. *See* Ala. Code § 8-1-197.

the limited exceptions set out by § 8-1-1 is void." *Id*. These exceptions include allowing restraints of trade against agents and employees from conducting similar business and soliciting customers from his or her former employer. ALA. CODE § 8-1-1 (1975). "The employee-employer exception to the voidness of noncompete agreements does not save a noncompete agreement unless the employee-employer relationship exists *at the time the agreement is executed*." *Pitney Bowes, Inc. v. Berney Office Sol.*, 823 So. 2d 659, 662 (Ala. 2001) (emphasis in original).

"Several factors are relevant in determining whether an individual is an employee of another. Obviously, one of the most important factors is whether there is evidence of an offer of employment and acceptance of that offer. Another important factor is 'the degree of control the alleged [employer] retains over the alleged [employee].'" *Lathan Roof Am., Inc. v. Hairston*, 828 So. 2d 262, 265 (Ala. 2002). *See also Bay Shore Prop. Inc., v. Drew Corp.*, 565 So. 2d 32, 34 (Ala. 1990) (holding "[f]or an agency [or employment][3] relationship to exist, there must be a right of control by the principal over the agent. However, it is not essential that the right of control be exercised, so long as that right actually exists.") Additionally, "[f]or one to be an agent, the other party must retain the right to direct the manner in

---

[3] Regarding employment, the terms "principal" and "employer" are used to indicate the party who has the right to control. Likewise, the terms "agent" and "employee" are used to indicate which party is under control. *See* RESTATEMENT OF EMPLOYMENT LAW § 1.01 cmt. a (AM. LAW. INST. 2019).

which the business shall be done, as well as the results to be accomplished." *Franklin v. Mitchell*, 87 So. 3d 573, 581 (Ala. Civ. App. 2011) (citing *Brown v. Commercial Dispatch Publishing Co*., 504 So. 2d 245, 246 (Ala. 1987)). *See also Tyson Foods Inc*. *v*. *Stevens*, 783 So. 2d 804, 808 (holding that the existence of agency is determined by the facts, "not by how the parties choose to characterize their relationship.") Generally, whether an employment relationship exists is a question for the fact-finder or jury. *S. Ala. Skills Training Consortium v. Ford*, 997 So. 2d 309, 327 (Ala. Civ. App. 2008).

The crux of this issue is whether a genuine dispute exists about whether the Defendant was an employee when he signed the agreement on November 21, 2010. Indeed, the evidence presented by the Defendant indicates that the staff considered his official start date at the Plaintiff's company to be December 1, 2010. His affidavit provides that while he signed the employment agreement on November 21, 2010, the contract stated it was "made and entered into this 1st day of December, 2010." (Doc. 32, p. 4). He also provides emails, a newsletter, and his application for health insurance that indicate that his start date was December 1, 2010. *See* (Doc. 32, p. 10, 13, 18, 21). However, these facts do not solely determine that the "employer-employee" relationship commenced in December. There must also be a consideration of when the right to control the employee existed and the extent of control exercised between the two parties. *Lathan Roof Am*., 828 So. 2d at 265.

Having reviewed the evidence and resolved doubts in favor of the non-moving party, the Court finds that a genuine dispute of material fact exists as to whether the Defendant could be considered an agent or employee before signing the employment agreement on November 21, 2010. The Plaintiff submitted an email from September 25, 2010, in which M5's CEO Lee Harkins is seemingly directing the Defendant to "tape a video bio for posting; revise your written bio; [and] call some of your close clients and give them advance notice." (Doc. 38-1, p. 3). Further, the Defendant authored and sent a newsletter article to Mr. Harkins on November 14, 2010, for the Plaintiff to use for the business. (Doc. 38-2, p. 2-4). Based upon this evidence, a reasonable fact finder could conclude that the Defendant was an employee on November 21, 2010, based upon the right to control the Defendant's actions and level of control the Plaintiff maintained over the Defendant in these interactions.

The Defendant relies on *Pitney Bowes* and *Dawson v. Ameritox, Ltd.*, 571 F. App'x. 875 (11th Cir. 2014) to support his position, but these cases are factually distinguishable from the current issue. In *Pitney Bowes*, the Supreme Court of Alabama found that no "employer-employee" relationship existed between the parties because the company looking to enforce the employment agreement (Pitney Bowes), had its future employees sign the agreement a month before acquiring Montgomery Office Equipment, the employees' current employer. *Pitney Bowes*, 823 So. 2d at 661. No relationship existed between the two before the acquisition,

and the concurrence noted that the parties did not contest when the relationship began. *Id*. at 662. Additionally, in *Dawson*, the Eleventh Circuit found no "employer-employee" relationship existed under Alabama law as the employment agreement was signed a few days before the plaintiff officially started his position. *Dawson*, 571 F. App'x. at 880. In this case, the Defendant signed the agreement a few months before his official start date, and the evidence suggests that his performance could have been subject to the Plaintiff's control in the months before signing. Accordingly, the Court finds a genuine dispute of material fact exists, and granting summary judgment is denied for Counts I (a-b)[4].

## B. Count IV – Breach of Fiduciary Duty

In its next count, the Plaintiff claims the Defendant breached his fiduciary duty to act with "good faith, loyalty, and fair dealings" to his former employer. (Doc. 26, p. 9). The Defendant claims that he did not violate his fiduciary duty to the Plaintiff as it did not adequately allege what the Defendant did to breach this duty and there is no enforceable non-compete agreement. (Doc. 31, p. 14).

"It is an agent's duty to act, in all circumstances, with due regard for the interests of his principal, and to act with the utmost good faith and loyalty." *Allied*

---

[4] The Defendant also argues that even if he can be considered an employee on November 21, 2019, there was no consideration provided for the agreement to be binding. The contract does provide that one dollar was provided for consideration. (Doc. 26, p. 16). Nominal consideration for a contract is enough. *See Clark v. McGinn*, 105 So. 2d 668, 671 (Ala. 1958).

*Supply Co. v. Allied Supply Co.*, 585 So. 2d 33, 37 (Ala. 1991) (citing *Williams v.*

*Williams*, 497 So. 2d 481 (Ala. 1986)). Further, "[t]he principal-agency relationship

is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and

fair dealing." *Miller v. Jackson Hosp. & Clinic*, 776 So. 2d 122, 124 (Ala. 2000).

As mentioned above, "[F]or an agency relationship to exist, there must be a right of

control by the principal over the agent." *Bayshore Prop.*, 565 So. 2d at 34. For a

principal to prove control, the "proof of control requires more than proof of a mere

right to determine if the person claimed to be an agent is conforming to the

requirements of a contract." *Franklin v. Mitchell*, 87 So. 3d 573, 581 (Ala. Civ. App.

2011) (citing *Malmberg v. American Honda Motor Co.*, 644 So. 2d 888, 890 (Ala.

1994). Stated plainly, Alabama law provides that *current* employees owe their

employer a fiduciary duty of good faith, loyalty, and fair dealing.

The facts presented in the complaint, supported by a copy of an email

solicitation, suggest that the Defendant was operating a competing organization and

soliciting clients in October 2017. (Doc. 26, p. 21). The Plaintiff alleges that the

Defendant was not an employee after July 7, 2017. (Doc. 26, p. 3). Presumably, the

employer-employee relationship ended in July, and the Plaintiff has not alleged any

facts that indicate that it maintained right of control over the Defendant after his

employment ended. The existence of an employment contract that implements

restrictions against a former employee does not solely indicate that control exists,

pursuant to *Malmberg*. 644 So. 2d at 890. Nor has the Plaintiff alleged any activity that could constitute the Defendant breaching his fiduciary duty when he was a current employee. Accordingly, the validity of the employment agreement is irrelevant to this discussion. While questions about the existence of an employment relationship are typically decided by a jury, no genuine dispute of material fact exists here. Because no employment relationship exists, the Defendant does not owe the Plaintiff a fiduciary duty. Therefore, summary judgment as to Count IV is granted.

## C. Count V – Injunctive Relief

Finally, the Plaintiff argues that it should be granted preliminary and permanent injunctive relief because it claims the Defendant breached his employee agreement, misappropriated trade secrets, and breached his fiduciary obligations. (Doc. 26, p. 10). The Plaintiff claims that if this relief is not granted, it "will be immediately and irreparably harmed by" such things as continuous loss of business and opportunities. (Doc. 26, ¶ 34). The Defendant argues that even if the Plaintiff had successfully stated a claim in the above counts, its request is not specified as required by Federal Rule of Civil Procedure Rule 65(d). (Doc. 28, p. 5).

"A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the

other litigant; and (4) that the preliminary injunction would not be averse to the public interest." *Chavez v. Florida SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). "To obtain a permanent injunction, a plaintiff must show (1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that a permanent injunction would not disserve the public interest." *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).

Granting an injunction [preliminary or permanent] is not a typical remedy and "is available not simply when the legal right asserted has been infringed, but only when that legal right has been infringed by an injury for which there is no adequate legal remedy and will result in irreparable injury if the injunction does not issue." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). *See also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (holding that a preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites.")

The Plaintiff's request for a preliminary and permanent injunction fails based on the facts presented. Regarding the preliminary injunction, the Plaintiff argues that it has demonstrated it can succeed on the merits based on alleged facts about the Defendant's breach of the employment agreement, misappropriation of trade secrets,

and breach of fiduciary duties. (Doc. 26, ¶ 31). While the Court finds that a genuine dispute of material fact exists about when the "employer-employee" relationship began, there is no such dispute regarding whether the Defendant breached his fiduciary duty to the Plaintiff after his employment ended. Further, as the Court discussed above, the Plaintiff did not plausibly allege facts that the Defendant misused confidential material or misappropriated trade secrets. Accordingly, when balancing these allegations, the Court finds the Plaintiff has not demonstrated a substantial likelihood of success on the merits. As the Plaintiff cannot satisfy the first step, a preliminary injunction cannot be granted. *See Chavez*, 742 F.3d at 1271.

Further, the Plaintiff's request for a permanent injunction fails for similar reasons. The Plaintiff claims that it has been harmed by the Defendant by such actions as "[c]ontinued loss of business and customer relationships; [d]isclosure of its trade secrets, customer lists, and other confidential information…; and [c]ontinued loss of profits, business opportunity, and further monetary damages." (Doc. 26, p. 11). However, even though it lists these alleged damages, the Plaintiff has not adequately supported *how* it has been irreparably injured besides listing these injuries in the complaint. There is no information in the complaint that supports that it has suffered lost profits or loss of business because of the Defendant's conduct. The Court has already determined that the Plaintiff has not plausibly alleged that the Defendant has used or misappropriated trade secrets. Therefore, providing such

extraordinary relief is not appropriate as the Plaintiff cannot satisfy all factors for granting a permanent injunction. *See U.S. Army Corps of Eng'rs*. 424 F.3d at 1127. Therefore, summary judgment as to Count V is granted.

## VI.   CONCLUSION

Accordingly,

IT IS ORDERED that the Defendant's motion to dismiss Counts I (c), II, and III of the complaint is **GRANTED**.

IT IS FURTHER ORDERED that the Defendant's motion for partial summary judgment as to Count I (a-b) is **DENIED** and **GRANTED** as to Counts IV and V.

IT IS FURTHER ORDERED that the parties shall schedule a discovery conference pursuant to Rule 26 of the Federal Rules of Civil Procedure by December 26, 2019.

**DONE** and **ORDERED** this December 12, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE